**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-60212-CR-ALTMAN**

**UNITED STATES**,

    *Plaintiff*,

v.

**NOLAN FERNANDEZ,**

    *Defendant*.

_____/

**ORDER**

After the police found almost 20 pounds of meth in Nolan Fernandez's car, he confessed to transporting the drugs from Philadelphia to Fort Lauderdale. Fernandez promptly pled guilty, and the Hon. William J. Zloch sentenced him to 129 months in prison, to be followed by 48 months of supervised release. Four years later, in the midst of a global pandemic, Fernandez asked the Warden of his facility (FCI-Pollock) to transfer him to home confinement. When the Warden refused, Fernandez filed this Motion,[1] in which he likewise asks for home detention.

But this Court doesn't have the power to compel the Bureau of Prisons (the "BOP") to transfer Fernandez to home confinement. And, even if his Motion could be construed as a request for a sentencing *reduction*, Fernandez has not carried his burden of showing either (1) that his case presents "extraordinary and compelling" circumstances or (2) that he's no longer a danger to the community. His Motion is therefore **DENIED**.

---

[1] The Motion is now ripe. *See* Motion for Modification of Sentence (the "Motion") [ECF No. 95]; Response to Motion for Modification of Sentence (the "Response") [ECF No. 96]; Reply to Response to Motion for Modification of Sentence (the "Reply") [ECF No. 97].

## THE FACTS

The Defendant, Nolan Fernandez ("Fernandez"), is 42 years old. *See* Mot. at 8. In 2015, he pled guilty to possessing (with the intent to distribute) five or more kilograms of methamphetamine. *See* Plea Agreement [ECF No. 45]. In exchange for his guilty plea, the Government dismissed a second count of conspiracy to possess with the intent to distribute. *Id.*

Fernandez got caught up in a sting operation. *See* Factual Proffer [ECF No. 46] at 1. After texting with a drug dealer who turned out to be an undercover agent, Fernandez drove approximately 19 pounds of methamphetamine from Philadelphia to Fort Lauderdale, where he was greeted by police officers. *Id.* at 1–2. The officers brought a drug dog who "alerted" to the vehicle—after which Fernandez gave the officers consent to search his car. *Id.* at 2. There, the officers found 12 packages of methamphetamine. *Id.* Fernandez eventually waived his *Miranda* rights and confessed. *Id.* at 4. After Fernandez pled guilty, Judge Zloch sentenced him to 129 months in prison—to be followed by 48 months of supervised release. *See* Judgment [ECF No. 62].

As of this writing, Fernandez's sentence is set to expire on March 1, 2024, which means that he still has 40 months—or roughly 30%—of his sentence remaining. *See* Mot at 2. On May 7, 2020, Fernandez asked the Warden of FCI-Pollock to transfer him to home confinement. *See* Response, Ex.1 (Letter to Warden) [ECF No. 96-2]. Eight days later, on May 15, 2020, the Warden denied this request. *See* Mot., Ex. A (Letter from Warden). Fernandez didn't appeal this denial. After a false start,[2] Fernandez filed this Motion on July 13, 2020. *See* Docket.

---

[2] On May 12, 2020, Fernandez filed his first motion for compassionate release, *see* First Motion for Compassionate Release [ECF No. 90]. In it, however, he admitted that he hadn't exhausted his administrative remedies and asked for more time "to allow the BOP an opportunity to reply" to his administrative request. *Id.* at 2. This Court thus denied his First Motion without prejudice. *See* Order [ECF No. 94].

2

## ANALYSIS

### I.   Home Confinement

Fernandez "is requesting a home confinement placement." Mot. at 2. The Government opposes this request and argues that "[t]he determination of whether the balance of an inmate's sentence will be converted from imprisonment to home confinement . . . is solely within the province of the Bureau of Prisons ("B.O.P.") and not reviewable by the Court." Response at 11.

The Government is right when it says that this Court cannot tell the BOP where to house its inmates. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a particular facility or program. *See* § 3582(a). But decisionmaking authority rests with the BOP."); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). And home confinement is still a form of "incarceration." *United States v. Springer*, ___ F. App'x ___, 2020 WL 3989451, at *2 (10th Cir. July 15, 2020); *id.* ("Springer was transferred to home confinement under the recently enacted CARES Act due to the COVID-19 pandemic. Springer's transfer to home confinement is not a release from imprisonment, nor does this transfer reduce the length of his custodial sentence."); *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014) ("Section 3624(c) makes clear that, even though a prisoner is . . . in home confinement, he is still serving a 'term of imprisonment.' When read together, these statutes plainly indicate that a person is in the BOP's 'custody' while serving the remainder of a sentence in home confinement." (internal citations omitted)).

While the Eleventh Circuit has not clarified whether courts may order home confinement under § 3582(c)(1)—the compassionate release provision at issue here—its analysis of the closely-related § 3582(c)(2) is instructive. Like our § 3582(c)(1), § 3582(c)(2) allows an inmate to petition

for a reduced sentence *only* after the U.S. Sentencing Commission has lowered the Guidelines range under which that inmate was sentenced. *See* § 3582(c)(2) ("In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."). And, in the context of § 3582(c)(2), the Eleventh Circuit has made clear that district courts may not intrude on the BOP's core sphere of expertise by directing an inmate to home confinement. *See United States v. Anderson*, 517 F. App'x 772, 775 (11th Cir. 2013) ("[T]o the extent that Anderson requested that the district court order the BOP to place him in home confinement, that request is outside the scope of § 3582(c)(2). The BOP, not the district court, retained authority to choose the place of Anderson's incarceration.").

Notably, the only federal appellate court to consider this issue under the provision at issue here (§ 3582(c)(1)) has held—consistent with the Eleventh Circuit's approach in *Anderson*—that "the authority to grant home confinement remains solely with the Attorney General and the BOP." *United States v. Brummett*, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020). And the district courts in this Circuit agree. *See United States v. Bonilla Mesa*, 2020 WL 4757335, at *7 (S.D. Fla. July 17, 2020) ("Defendant asks, in the alternative, that the Court place him on home confinement for the remainder of his sentence. The Court has no authority to order this relief."); *United States v. Israel*, 2020 WL 3893987, at *9 (S.D. Fla. July 10, 2020) ("First, to the extent that Defendant seeks release to home confinement, the Court is without authority to grant the requested relief."); *United States v. Christian*, 2020 WL 5518616, at *1 (S.D. Ga. Sept. 14, 2020) ("This

4

Court lacks the authority to order the BOP to release a prisoner on home confinement."); *United States v. Hester*, 2020 WL 5535010, at *1 n.1 (M.D. Ala. Sept. 15, 2020) ("To the extent that Hester seeks release to home confinement pursuant to the CARES Act due to the COVID-19 pandemic (doc. 66 at 10), the Court has no authority to order the Bureau of Prisons to change the Defendant's current place of incarceration."); *United States v. Brantly*, 2020 WL 5514571, at *1 (M.D. Fla. Sept. 14, 2020) ("However, the Court has no authority to direct the Bureau of Prisons (BOP) to place Brantley in home confinement because such decisions are committed solely to the BOP's discretion."). This Court, then, does not have the authority to grant Fernandez the relief he seeks.

In some respects, though, this discussion is (purely) academic because the Court could achieve the same result by simply reducing Fernandez's sentence to time served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *Israel*, 2020 WL 3893987, at *9 ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, the Court would have to conclude that Fernandez has carried his burden of showing that he's entitled to that reduction, which, for the reasons set out below, he fails to do.

**II.     Sentence Reduction**

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure

5

of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020) (applying this four-step analysis). The Court will discuss each of these four steps in turn.

### A. Exhaustion of Administrative Rights to Appeal

In his Letter to the Warden, Fernandez requested "immediate placement to a Residential Re-Entry Center (RRC) and/or Home Confinement under the provisions of the 'Cares Act.'" Response, Ex. 1 (Letter to the Warden). The Warden denied this request. *See* Mot., Ex. A (Letter from the Warden).

Fernandez now contends that this denial satisfied § 3582's exhaustion requirement. *See* Mot. at 2–3. The Government responds that Fernandez's letter—which requested home confinement under 18 U.S.C. § 3624—didn't satisfy § 3582's separate exhaustion requirement. *See* Response at 11. In the Government's view, to exhaust his administrative remedies under § 3582, Fernandez had to ask the Warden for compassionate release—not home confinement. *Id.* Fernandez sidesteps this question of statutory comparison by saying only that "it is undisputed that Fernandez filed his request for administrative relief from his incarceration and the Warden failed to respond . . . . Exhaustion is complete." Reply at 2.

The Government is right to note that a request for home confinement under § 3624 differs in material respects from a request for compassionate release under § 3582. *See, e.g.*, *United States v. Alvarez*, 2020 WL 2572519, at *3 (S.D. Fla. May 21, 2020) ("[A] request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release. The BOP is utilizing its authority under 18 U.S.C. [§ 3624(c)(2)]—not the compassionate release provision of 18 U.S.C. § 3582(c)—to effectuate the Attorney General's directive to the BOP regarding home confinement in connection with the CARES Act." (cleaned up)). And it makes sense to say that, to exhaust one's administrative remedies under a particular statute, one must ask for the specific relief that statute provides. The Eleventh Circuit, admittedly, hasn't spoken on this issue—and the district courts within the Circuit are decidedly split on it. *Compare United States v. Deal*, 2020 WL 5604662, at *3 (S.D. Ga. Sept. 18, 2020) ("[A] request for release to home confinement significantly differs from a compassionate release request. Thus, Deal's requests for release to home confinement cannot satisfy Section 3582(c)(1)(A)'s administrative exhaustion requirement as to compassionate release.") *with United States v. Weems*, 2020 WL 4558381, at *5 (S.D. Fla. Aug. 7, 2020) ("Although the Government now maintains that Defendant's request is technically 'different' because a request for home confinement is left 'strictly' to the BOP's discretion, the Court fails to see how Defendant's *pro se* request [for home confinement] to the BOP is substantively different than a request for compassionate release.").

Fortunately, this Court need not resolve this question here because, either way, Fernandez's Motion would be denied.

### B. 18 U.S.C. § 3553

After considering the relevant § 3553 factors, Judge Zloch sentenced Fernandez to 129 months in prison. *See* Judgment. On appeal, the Eleventh Circuit affirmed his conviction and

7

sentence. *See United States v. Fernandez*, 618 F. App'x 657 (11th Cir. 2015). Fernandez does not challenge Judge Zloch's application of the § 3553 factors, and this Court sees no reason to disturb Judge Zloch's findings—which, after all, were affirmed on appeal. Thus, "to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(a), the § 3553 factors counsel against a reduction here. In any case, as outlined below, the remaining factors likewise militate against a reduction.

### C.  18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a

>> reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c)(1).

Because Fernandez is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But § 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Fernandez cannot satisfy the "Age of the Defendant" test: He is 42 years old, not 65; he has not alleged any age-related decline; and he has served neither 10 years nor 75% of his overall sentence. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Fernandez says that he "is suffering from high glucose, pre-diabetes[,] and high cholesterol," Mot. at 8—and he appends to his Motion a copy of his bloodwork report, *see* Mot., Ex. B, and two doctors' affidavits, *see* Mot., Exs. C–D. Neither doctor, though, purports to interpret Fernandez's bloodwork, and this Court is (immensely) ill-qualified to do so. The doctors, for what it's worth, never examined Fernandez. Instead, they submitted (some bizarre) general affidavits

11

on behalf of any inmates who might need to explain the dangers COVID-19 poses. *See, e.g.*, Ex. C. ¶ 4 ("I submit this affidavit in support of any defendant seeking release from custody during the COVID-19 pandemic, so long as such release does not jeopardize public safety."). Fernandez's ailments, in short, are entirely self-diagnosed. And this Court will not release a convicted meth dealer on the basis of an unverified (and uncorroborated) self-diagnosis. *See United States v. Cabrera*, No. 19-20131-CR-ALTMAN, 2020 WL 6219332, at *5 (S.D. Fla. Oct. 22, 2020) ("This Court will not release Cabrera on the basis of unsubstantiated claims about diseases he himself never disclosed, either to this Court (at sentencing) or to the BOP."); *Heromin*, 2019 WL 2411311, at *2 ("But the bulk of Heromin's Motion rests on his self-diagnosis—not upon the judgment of his medical provider. . . . Without his medical provider corroborating either of these requirements [for compassionate release], Heromin has not shown a foundation for compassionate release based on his medical condition."). Fernandez has thus failed to show that he suffers from any infirmities *at all*.

Nevertheless, even accepting that Fernandez suffers from these ailments, his Motion fails. To begin with, Fernandez never describes his conditions as (1) a "serious physical or medical condition," (2) "a serious functional or cognitive impairment," or (3) a part of his "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See generally* Mot. To the contrary, he says precisely the opposite—that "Mr. Fernandez is not in any urgent care requirements at this time, however, the request is preventative in nature . . . ." *Id*. at 8. Nor does Fernandez contend that these diseases qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). *See id.*

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic

security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 9,300,000 people have tested positive for the disease, and over 231,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Nov. 5, 2020),

And, while "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), the CDC has recognized that some underlying conditions put people "at increased risk of a severe illness," CDC, *People at Increased Risk: People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 5, 2020). Notably, however, *none* of the ailments from which Fernandez claims to suffer (high glucose levels, high cholesterol, or pre-diabetes) appear on the CDC's list of conditions that increase the risk of complications from COVID-19. *See id.*

But, even if Fernandez *were* more susceptible to COVID-19, his request would still fail for the following two reasons.

*First*, Fernandez provides no evidence for his claim that "[i]t is only a matter of time before [he] is contaminated" Mot. at 3. Nor could he. As of this writing—some three months later—there is only *one* inmate with active COVID-19 at FCI-Pollock. *See* Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed Nov. 5, 2020). In this respect, Fernandez does not acknowledge, much less respond to, the Government's argument that the BOP has taken, and will continue to take, drastic measures to make FCI-Pollock as safe as possible in the circumstances. These include "quarantine and isolation protocols, restricted inmate transfers,

13

limited group gatherings, employed screening procedures, and suspended visitation and tours." Response at 27. In short, Fernandez has not carried his burden of showing that he is at risk of *contracting* COVID-19.

*Second*, even if he *were* to contract COVID-19, Fernandez submits no evidence that his conditions would "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii), or that he's significantly more vulnerable than the thousands of other incarcerated men in that (or any other) facility. After all, "virtually every person over the age of 50 has some health condition that could conceivably put that person at a greater risk of succumbing to the coronavirus, but this does not entitle every inmate over 50 to be released. Attorney General William Barr's memo urging the release of particularly vulnerable inmates is not a get-out-of-jail-free card for every incarcerated person." *United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020) (finding that an inmate who, during the COVID-19 pandemic, was 50 years old and suffered from hypertension had failed to satisfy the "extraordinary and compelling reasons" test); *see also United States v. Brown*, 2020 WL 2568807, at *4 (S.D. Fla. May 21, 2020) (concluding that, even during the COVID-19 pandemic, an inmate who was 44 years old and suffered from hypertension had failed to satisfy the "extraordinary and compelling reasons" test); *United States v. Burkes*, 2020 WL 2308315 (S.D. Fla. May 8, 2020) (petitioner's hypertension, coupled with the COVID-19 pandemic, did not constitute "extraordinary and compelling reasons"). Fernandez never argues that his ailments are particularly severe—and they evidently didn't stop him from committing the crimes for which he was convicted. Note, in this respect, that "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745,

14

at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Because Fernandez has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### D.      18 U.S.C. § 3142

Even if Fernandez *had* shown compelling circumstances, though, his motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Fernandez has not even attempted to show that he represents no such danger. *See generally* Mot. (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon*, 2019 WL 5580233, at *2; *Heromin*, 2019 WL 2411311, at *2. This omission is fatal to his claim.

***

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that the Defendant's Motion for Reduction in Sentence [ECF No. 95] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 5th day of November 2020.

                                                 _____
                                                 **ROY K. ALTMAN**
                                                 **UNITED STATES DISTRICT JUDGE**

cc:      counsel of record